IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No. 2:16-cr-00122-DCN-2 |
| | ) | |
| DASHAWN TREVELL BROWN, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    This matter is before the court on defendant DaShawn Trevell Brown's ("Brown") motion for compassionate release, ECF No. 1039. For the reasons set forth below, the court grants the motion.

## I.  BACKGROUND

    This case arises out of actions by persons involved in a violent street gang known as the "Cowboys" based in the Brittlebank area of Walterboro, South Carolina. ECF No. 605, Presentence Investigation Report ("PSR") ¶ 28.[1] Brown was a trusted member of the Cowboys who participated in several criminal acts on behalf of the gang. See id. ¶¶ 38–42. In pertinent part, Brown and the Cowboys participated in several shootings between 2011 and 2013, which resulted in both several intended victims and innocent bystanders suffering gunshot wounds. Id. ¶¶ 38–40. Additionally, while attending a drag race in November 2015, Brown was among the members of the Cowboys who assisted co-defendant Khiry Broughton ("Broughton") in robbing betting winnings from those who arranged the race. Id. ¶¶ 41–42. Brown and other members of the Cowboys gang

---

[1] The docket lists two identical final presentence investigation reports. ECF Nos. 605; 606. For simplicity's sake, when the court cites to the PSR, it is citing to ECF No. 605.

1

discharged firearms during the attempted robbery which resulted in two victims, B.G. and T.M., sustaining life threatening physical injuries.  Id.  Those injuries resulted in significant medical treatment costs.  Id.

The grand jury charged Brown, along with eight others, in an eleven-count indictment on February 9, 2016.  ECF No. 1.  The grand jury named Brown in Counts 1, 10, and 11.[2]  Id.  Count 1 charges Brown and four other defendants as being persons employed by and associated with the Cowboys who violated 18 U.S.C. § 1962(c) by conducting and participating in the affairs of the enterprise through a pattern of racketeering activity—in other words, Brown was charged as a participant in a conspiracy.  Id.  Multiple acts formed that racketeering activity including: (1) murder in violation of S.C. Code Ann. Sections 16-3-29, 16-3-10, and 16-1-40; (2) robbery in violation of S.C. Code Ann. Section 16-11-330; and (3) narcotics trafficking in violation of 21 U.S.C. §§ 841, 846.  Id.  On January 17, 2017, Brown pleaded guilty to Count 1 of the Indictment after arraignment in open court.  ECF Nos. 311; 312.

On December 13, 2017, the court held Brown's sentencing hearing.  ECF No. 604.  On December 20, 2017, the court issued its judgment and statement of reasons and sentenced Brown under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") to an imprisonment term of 240 months, for which he received fourteen

---

[2] Brown pleaded guilty to only Count 1, ECF Nos. 311; 312, so while the court provides the other counts to the indictment for completeness, it only includes the details for Count 1 above the line.  Count 10 charges Brown and two other defendants with knowingly and unlawfully attempting to murder rival gang members B.G. and T.M., in violation of S.C. Code Ann. Section 16-3-29 and 18 U.S.C. §§ 1959(a)(5), 2.  ECF No. 1.  Count 11 charges Brown and two other defendants with using, carrying, and discharging a firearm during and in relation to a crime of violation in violation—namely, attempted murder—in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 2.  Id.

2

months (14) credit for time served on his state court charges, followed by three (3) years of supervised release. ECF No. 607. The court also sentenced Brown to pay restitution in the amount of $308,608.06 with the obligation being joint and several with codefendant Broughton. Id. On January 9, 2018, the court amended its judgment to correct the restitution amount to $299,608.06.[3] ECF No. 612. Brown did not appeal his judgment or conviction.

On January 29, 2018, Brown filed a motion to vacate pursuant to 28 U.S.C. § 2255. ECF No. 686. On December 21, 2018, the government filed under seal a motion to dismiss or, alternatively, a motion for summary judgment in favor of the government regarding Brown's § 2255 motion. ECF No. 728. On June 12, 2020, the court issued an order denying in part and taking under advisement in part Brown's motion to vacate—namely, the court granted the government's motion for summary judgment on all of Brown's § 2255 claims except for Grounds 3 and 7, the claims alleging ineffective assistance of counsel for failure to appeal. ECF No. 799. The court indicated it would schedule an evidentiary hearing to resolve the factual dispute regarding whether Brown directed his former counsel, Adams, to file an appeal. Id. at 20. Subsequently, Brown filed a motion to supplement and amend his § 2255 motion on July 16, 2021, ECF No. 880, which the court denied on June 30, 2022, because it was untimely and because it failed to relate back to Brown's original petition, ECF No. 933. On August 8, 2022,

---

[3] The restitution amount of $299,608.06 reflects the medical costs associated with victims B.G. and T.M.'s medical treatment for the gunshot wounds. PSR ¶ 42. One victim incurred medical treatment costs at the Medical University of South Carolina ("MUSC") totaling $91,024, which was paid by the victim's insurance company, and another victim incurred $208,584.06 in medical treatment costs at MUSC, which was paid by Medicaid. Id.

3

Brown filed a second motion to supplement and amend his § 2255 motion, ECF No. 940, which the court denied on March 27, 2023, because it was untimely and/or because the court lacked jurisdiction to consider the newly raised arguments, ECF No. 1014.

On June 30, 2023, Brown filed a motion for compassionate release. ECF No. 1039. The United States of America (the "government") has not yet filed a response and the time to do so has since expired. ECF No. 1069. On November 9, 2023, the court held a hearing on the pending motion for compassionate release. ECF No. 1071. As such, the motion is ripe for review.

## II. STANDARD

### A. Compassionate Release

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides an exception to this general rule where "extraordinary and compelling reasons warrant such a reduction." Courts refer to requests under this section as motions for "compassionate release." United States v. Norris, 458 F. Supp. 3d 383, 385 (E.D.N.C. 2020). Prior to the First Step Act, Pub. L. No 115-391, 132 Stat. 5194 (2018), the law permitted only the Bureau of Prisons (the "BOP") to file motions for compassionate release. United States v. Dowdell, 669 F. App'x 662 (4th Cir. 2016). Section 603 of the First Step Act amended § 3582(c)(1)(A)(i), authorizing defendants themselves to file requests for compassionate release with the sentencing court after exhausting all available administrative remedies. United States v. Griggs, 462 F. Supp. 3d 610, 615 (D.S.C. 2020).

The determination of whether "extraordinary and compelling circumstances" warrant relief is within the discretion of the district court. United States v. Beck, 425 F.

Supp. 3d 573, 579 (M.D.N.C. 2019). The Fourth Circuit recently clarified that district courts are empowered to "consider <u>any</u> extraordinary and compelling reason for release that defendant might raise." <u>United States v. McCoy</u>, 981 F.3d 271, 284 (4th Cir. 2020) (quoting <u>United States v. Brooker</u>, 976 F.3d 228, 230 (2d Cir. 2020)). If the court finds that such circumstances warrant a reduction in a defendant's sentence, it must "consider the factors set forth in [18 U.S.C.] § 3553(a)" to determine whether such a reduction is justified. 18 U.S.C. § 3582(c)(1)(A)(i). A defendant seeking compassionate release "has the burden of establishing that such relief is warranted." <u>Griggs</u>, 462 F. Supp. 3d at 615. Even after the changes to § 3582(c)(1)(A)(i) promulgated under the First Step Act, the burden remains "exceptionally high." <u>McCoy</u>, 981 F.3d at 288.

### III. DISCUSSION

Brown moves for his compassionate release due to the sentencing disparity that he claims exists between his sentence and his hypothetical sentence should he be sentenced today and because of the stark sentencing disparity between his sentence and the sentences of his co-conspirators. The court first considers, as it must, whether Brown has exhausted all administrative remedies or otherwise met the threshold requirement of § 3582(c)(1)(A). The court then addresses the substance of Brown's motion, first with an examination of the reasons that Brown claims meet the extraordinary and compelling threshold. Finally, the court examines the § 3553(a) factors to consider whether they warrant a reduction in Brown's sentence, ultimately finding that they do.

#### A. Administrative Exhaustion

As a prerequisite to a motion for compassionate relief, a defendant must exhaust his available administrative remedies. <u>Griggs</u>, 462 F. Supp. 3d at 615. Section

5

3582(c)(1)(A)(i) provides that a defendant does so when: (1) the "defendant has fully exhausted his administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (2) the defendant requested compassionate relief from the warden of his facility and thirty days from the warden's receipt of the request has lapsed without response, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i).

Brown was serving his sentence at the BOP at Federal Correctional Institute Coleman ("FCI Coleman"). ECF No. 1039 at 2. Brown was brought by way of a writ to the Charleston County Detention Center to appear for the evidentiary hearing related to his § 2255 petition in the District Court in Charleston. Id. Brown asked his counsel to file a motion for compassionate release after he arrived at the jail in Charleston, and his counsel sent the request to the Regional Counsel for FCI Coleman, as well as to the Warden and Executive Assistant for FCI Coleman, on January 3, 2023.[4] Id.; see also ECF No. 1039-1. The BOP responded on January 11, 2023, saying that the request would not be processed because Brown was not in BOP custody, and Brown was unable to place himself back in BOP custody to personally submit a request. ECF No. 1039 at 2–3. Brown urges the court to follow other courts confronted with similar situations and find that he has satisfactorily pursued and exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). Id. (first citing United States v. Williams, 2020 WL 3073320, at *3 (D. Md. June 10, 2020); then citing United States v. Barringer, 2020

---

[4] Brown has remained in the Charleston County Detention Center since then. Id.

6

WL 2557035, at *3 (D. Md. May 19, 2020); and then citing United States v. Norris, 458 F. Supp. 3d 383, 386 (E.D.N.C. 2020)).

Administrative exhaustion in this context requires the defendant to either exhaust all administrative rights to appeal a failure of the BOP to bring a motion for compassionate release on his behalf or the lapse of thirty days from the receipt of a request for compassionate release by the warden of defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). Here, Brown remains detained at the Charleston County Detention Center. ECF No. 1039 at 2. The BOP has not moved for compassionate release on Brown's behalf and, because Brown is not at a BOP facility, there is no BOP warden to whom Brown can direct a compassionate relief request. Brown's counsel sent his request to the Regional Counsel for FCI Coleman as well as to the Warden and Executive Assistant for FCI Coleman eleven months ago. Id. Consequently, the court finds that Brown has exhausted his administrative remedies.

### B. Extraordinary and Compelling Reasons

Brown argues for his compassionate release based on his relative youth at the time of the offenses, the substantial sentence he has already served, the considerable disparity in sentences between Brown's sentence and his codefendants' sentences—who have all since been released—and the purported errors in the calculation of his Guidelines range. ECF No. 1039 at 4–5. He contends that each of these presents extraordinary and compelling reasons for his release. Id. The court starts by evaluating the sentencing disparity between Brown's sentence and the sentences of his co-conspirators, ultimately

finding the disparity establishes an extraordinary and compelling reason for his release, such that the court need not reach Brown's remaining arguments under this standard.

The court sentenced Brown to 240-months imprisonment. ECF No. 612. By contrast, his eight co-conspirators received sentences which ranged from time served to a maximum sentence of 155-months imprisonment.[5] ECF No. 1039 at 4–5. All of Brown's co-conspirators have since been released. See id. Brown argues that he is subject to an unwarranted sentencing disparity because he received a sentence significantly longer than the sentences his co-conspirators received for the same or similar crimes. Id. Notably, at the time of sentencing the Assistant United States attorney dissented from the sentencing calculation in the PSR and requested a sentence of 151 months, which would have been almost ninety months shorter than the sentence Brown received. ECF No. 605-1 at 1.

Sentencing disparities can be considered an extraordinary and compelling reason in certain circumstances. In McCoy, the Fourth Circuit instructed that "courts are

---

[5] The court provides the respective sentences of Brown's co-conspirators going from longest sentence to shortest. ECF No. 1039 at 6–7. Matthew Rashaun Jones received a 151-month sentence, and after moving for compassionate release, he was sentenced to time served on December 21, 2022. Id. at 6 (referencing ECF No. 988). Clyde Naquann Hampton also received a 151-month sentence, and after his successful appeal to the Fourth Circuit, he was sentenced to seventy-eight months. Id. (referencing ECF No. 721). Broughton, the leader of the Cowboys gang, received a 108-month sentence. Id. (referencing ECF No. 587). Christopher Sean Brown received a 108-month sentence, and after moving for compassionate release, was sentenced to time served on October 14, 2022. Id. (referencing ECF No. 977). Zaquann Ernest Hampton received an 84-month sentence. Id. (referencing ECF No. 570). The remaining three co-conspirators—Bryant Jameek Davis, William Lamont Cox, and Quinton John Fishburne—were sentenced to time served. Id. at 6–7 (referencing ECF Nos. 550; 567; 573). Thus, Brown received a sentence that was eighty-nine months longer than the longest sentence of his co-conspirators and approximately 240-months longer than the shortest sentences of his co-conspirators.

8

'empowered . . . to consider <u>any</u> extraordinary and compelling reason for release that a defendant might raise,'" including unwarranted sentencing disparities. 981 F.3d at 284 (quoting <u>Brooker</u>, 976 F.3d at 230). Indeed, "[t]here is as of now no 'applicable' policy statement governing compassionate release motions filed by defendants." <u>Id.</u> at 284. Other courts have found the disparity of sentences between co-conspirators constitutes an extraordinary and compelling reason for release in limited circumstances under Section 3582(c)(1)(A). <u>See, e.g.</u>, <u>United States v. Payton</u>, 2021 WL 927631, at *2 (D. Md. Mar. 11, 2021); <u>United States v. Eccleston</u>, 573 F. Supp. 3d 1013, 1017–18 (D. Md. 2021); <u>United States v. Sappleton</u>, 2021 WL 598232, at *1, *3 (D. Md. Feb. 16, 2021); <u>United States v. Petway</u>, 2023 WL 4353690, at *4 (E.D.N.C. July 5, 2023). The court finds the stark sentencing disparity between Brown and his eight co-conspirators establishes an extraordinary and compelling reason for his release. Finding this requirement satisfied, the court need not consider Brown's alternative arguments regarding sentencing errors and changes in sentencing law.[6]

### C. Section 3553 Factors

Concluding that Brown had demonstrated that his circumstances are extraordinary and compelling, the court next considers the factors set forth in in 18 U.S.C. § 3553(a). In sentencing a defendant or determining whether a reduction is justified, § 3553(a)

---

[6] The court notes that in light of recent amendments to the Guidelines, Brown's criminal history calculated today would place him in a lower criminal history category than the category he belonged at the time of sentencing, which also weighs in favor of finding an extraordinary and compelling reason for his release. <u>See</u> ECF No. 1039 at 9–11; U.S. Sent'g Guidelines Manual § 4A1.1 (U.S. Sent'g Comm'n 2023).

9

requires a court to "impose a sentence sufficient, but not greater than necessary" by considering the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense committed];
>    [. . .]
> (5) any pertinent policy statement
>    [. . .]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Brown emphasizes three factors which weigh heavily in his favor: (1) he was very young when he committed the crimes and has since learned from his mistakes; (2) his time in custody has been well spent; and (3) all of his co-conspirators, including the mastermind of the conspiracy, have since been released from prison. ECF No. 1039 at 6–9, 11–12. The court considers the factors in turn.

The nature and circumstances of the alleged offense were serious. Brown was a participant in a series of violent shootings as a member of the Cowboys gang and these were classified as attempted murder. PSR ¶¶ 38–42. Innocent persons were injured, some seriously injured, by Brown's actions, and the actions of his co-conspirators. Id. As the court recognized at sentencing, "Brown has had many more shootings and much more violence than anybody else in this case, including . . . Broughton." ECF No. 880-14

10

at 18:18–19:6.  Thus, Brown's 240-month sentence reflects the seriousness of the offense and promotes respect for the law.  Additionally, prior to the instant offense, Brown was involved in dangerous and unlawful activity such as assaults and shooting into cars and dwellings.  See PSR ¶¶ 48–59.  As such, Brown's long jail sentence protects the public from further crimes—as the court said at sentencing, "[Brown] can't shoot anybody if he's in jail, and he has a propensity to do that."  Id. at 20:8–9.  Altogether, these present a compelling argument for denial of Brown's motion.  See § 3553(a)(2).

However, the court finds that § 3553(a)(1), (a)(4) and (a)(6) strongly weigh in favor of granting Brown's motion for compassionate release.  At the time he was involved in the conspiracy, Brown was very young—he became involved with the Cowboys at sixteen and was sentenced for his involvement at twenty-four.  See 18 U.S.C. § 3582(c)(1)(A)(i).  In the years since, Brown has taken advantage of his time while incarcerated to educate himself and divest himself from gang-related activity.  See ECF No. 1039 at 11–12.  Moreover, as Brown has identified, his co-conspirators received significantly shorter sentences ranging from time served to 108 months.  See id. at 6–7.  For example, the leader of the Cowboys, Broughton, was sentenced to 108 months, which is less than half of Brown's 240-month sentence.  Id.  Brown has been in custody for this crime since January 2016, which comes to ninety-four months or almost eight years.  See id. at 1.  This is a significant sentencing disparity that weighs in favor of Brown's compassionate release or a reduction in his sentence.  See 18 U.S.C. § 3553(6).

Finally, the court acknowledges that Brown has made efforts at rehabilitation while imprisoned (for example, by pursuing "all possible programs and courses at BOP as well [as] at the Charleston County Detention Center") and has completed six months in a drug treatment program.  ECF No. 1039 at 11.  He has had only one disciplinary

11

infraction during his time at the prison for having a three-way phone call with his family which he did not know was prohibited. Id.; see also United States v. Henriquez, 2021 WL 5771543 at *2 (M.D.N.C. Dec. 6, 2021) (finding that the defendant's "model behavior in prison, his unusually deep efforts at successful rehabilitation, his work ethic, and the support of a significant number of BOP employees with personal knowledge of his family circumstances" favored a sentence reduction).

All in all, the court finds that Brown's § 3553 factors weigh in favor of reducing his sentence to time served.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Brown's motion for compassionate release. The previously imposed sentence is reduced to a total term of time served.

Upon release from imprisonment, Brown shall be placed on supervised release for a total term of three (3) years. While on supervised release, Brown shall comply with the mandatory and standard conditions of supervision outlined in 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3(c) (attached herein). Standard conditions of supervision 1 through 9 and 13 serve the statutory sentencing purposes of public protection and rehabilitation pursuant to 18 U.S.C. § 3553(a)(2)(C) and (D). Standard conditions of supervision 10 and 12 serve the statutory sentencing purpose of public protection pursuant to 18 U.S.C. § 3553(a)(2)(C). Standard condition of supervision 11 ensures that Brown does not engage in activities that may potentially conflict with the other conditions of supervision and that may pose risks to Brown's probation officer. All financial obligations previously imposed, including the previously imposed restitution in the amount of $299,608.06, remain in effect. Additionally, the following special conditions apply:

**Special Conditions**:

1. Brown must not incur new credit charges, or open additional lines of credit, without the approval of the probation officer. This condition is justified by the restitution owed in this case.

2. Brown must provide the probation officer with access to any requested financial information and authorize the release of any financial information. The probation office may share financial information with the U.S. Attorney' Office. This condition is justified by the restitution owed in this case.

3. Brown must pay any remaining unpaid restitution balance imposed by the Court in minimum monthly installments of $100 to commence ninety (90) days after release from custody (or following the imposition of sentence if a time served or probation case). The payments shall be made payable to "Clerk, U.S. District Court" and mailed to P.O. Box 835, Charleston, SC, 29402. Interest on any restitution ordered is waived. Payments shall be adjusted accordingly, based upon Brown's ability to pay as determined by the Court.

4. Brown must submit to substance abuse testing to determine if he has used a prohibited substance. He must contribute to the cost of such program not to exceed the amount determined reasonable by the Court approved U.S. Probation Office's "Sliding Scale for Services," and he will cooperate in securing any applicable third-party payment, such as insurance or

Medicaid. This condition is justified by the defendant's substance abuse history.

This order is stayed for up to fourteen days, to establish a release plan, to make appropriate travel arrangements, and to ensure Brown's safe release. Brown shall be released as soon as a release plan is established, appropriate travel arrangements are made, and it is safe for him to travel. If more than fourteen days are needed to make appropriate travel arrangements and ensure Brown's safe release, the parties shall immediately notify the court and show cause why the stay should be extended.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**November 17, 2023**
**Charleston, South Carolina**

**Attachment:**

**In accordance with 18 U.S.C. § 3583(d), the following are mandatory conditions of supervision:**

(1) You must not commit another federal, state, or local crime.

(2) You must not unlawfully possess a controlled substance.

(3) You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

(4) You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution, if applicable.

(5) You must cooperate in the collection of DNA as directed by the probation officer, if applicable.

(6) You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense, if applicable.

(7) You must participate in an approved program for domestic violence, if applicable.

**In accordance with U.S.S.G § 5D1.3(c), the following are standard conditions of supervision:**

(1) You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(2) After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed. *This condition serves the*

*statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(3) You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(4) You must answer truthfully the questions asked by your probation officer. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(5) You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(6) You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(7) You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(8) You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(9) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*

(10) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers). *This condition serves the statutory sentencing purposes of public protection. 18 U.S.C. § 3553(a)(2)(C).*

(11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court. *A confidential human source or informant is a defendant who engages in the prohibited activity of associating with persons engaged in criminal activity for the purpose of furnishing information to or acting as an agent for a law enforcement or intelligence agency. The activities required of confidential informants or human sources may potentially conflict with conditions normally imposed by a court and acting as a confidential informant or human source is generally inconsistent with the rehabilitative and re-integrative goals of supervision. Additionally, such activities may pose risks to the probation officers who supervise these individuals, especially when they have limited knowledge or no knowledge of the nature of the informant's activities.*

(12) If the probation officer determines, based on your criminal record, personal history or characteristics, that you pose a risk to another person (including an organization), the probation officer, **with the prior approval of the Court**, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk. *This*

*condition serves the statutory sentencing purposes of public protection. 18 U.S.C. § 3553(a)(2)(C).*

(13) You must follow the instructions of the probation officer related to the conditions of supervision. *This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).*